Alan Burkett sought damages for injuries he sustained on the job while operating a billet saw. Burkett brought suit against the manufacturer of the saw, Loma Machine Manufacturing, Inc.; the owner of the billet saw, Wolverine Tube, Inc.; his employer, PAR Enterprises; officers of PAR Enterprises; and eight employees of Wolverine: Clint Williams, Howard Martin, Harold Tedford, David Styers, Jerry Powell, John Busby, Neil LeMay, and Robert Melroy. The plaintiff voluntarily dismissed Robert Melroy on October 21, 1987.
PAR Enterprises is an agency that supplies various manufacturing firms with laborers. Wolverine, a manufacturer, entered into a contract with PAR under which PAR would supply it with general laborers. Burkett was a general laborer furnished by PAR to work at Wolverine. On his fifth day at work at Wolverine, Burkett was told to operate a billet saw, which is used to cut metal tubes, called billets, into blocks. While he was operating the saw, his left arm became caught in the saw and was severed.
The trial court entered a final summary judgment in favor of PAR Enterprises and its officers on August 24, 1988. Burkett did not appeal from that judgment. Also, Burkett did not pursue his claim against Wolverine, recognizing that the Workman's Compensation Act provides Wolverine with employer immunity as a special employer.[1] Burkett appeals from the entry of summary judgment in favor of Loma and the co-employee defendants. We affirm.
Burkett claims the billet saw was in a defective and unreasonably dangerous condition when used in a foreseeable manner, rendering Loma liable under the Alabama Extended Manufacturer's Liability Doctrine. With respect to the remaining seven co-employee defendants, Burkett claims that they acted willfully in removing a safety device from the saw with knowledge that injury would probably result and that they willfully failed to place another safety device on the saw. Alabama Code 1975, § 25-5-11(c)(1) and (2).
 I. Liability of Loma Machine Manufacturing, Inc.
Burkett bases his claim against Loma on the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), which applies when:
 "(1) [The Plaintiff suffers] injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
Casrell v. Altec Industries, Inc., 335 So.2d 128, 132-33
(1976). If substantial changes were made to the billet saw after its sale to Wolverine, Loma is relieved of liability under the AEMLD. Fenley v. Rouselle Corp., 531 So.2d 304 (Ala. 1988). Loma, the party moving for summary judgment, bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law.Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989); Rule 56(c), A.R.Civ.P.
Loma produced evidence of substantial changes to the saw after it sold the saw to Wolverine Tube Division (now Wolverine Tube, Inc.) in 1947. Adolph Nussbaum, a former president of Loma, inspected the saw on August 10, 1988. He stated in his deposition and affidavit that the saw had been altered in seven ways since the sale of the machine in 1947. Changes relevant to this case include (1) a new billet feed conveyor system, (2) modification of the original saw blade guard, increasing *Page 136 
the exposed part of the blade from 15 to 30 inches, and (3) addition of a splash guard, which prevents saw lubricant from spraying on the operator, and which, according to Nussbaum, also serves to help protect the operator of the saw from contact with the saw. The first two changes were made before Burkett's injury on March 14, 1986. It is not known who made the first two changes or when those changes were made other than that they had been made prior to Burkett's injury. The splash guard was added to the saw at some time after the injury. Exactly who at Wolverine added the splash guard is not known.
Loma contends that the modification of the original saw blade guard, increasing the exposed area of the blade, and the implementation of the new feed conveyor system, requiring the use of a metal bar to move the billet into place, were substantial changes. Because of these alterations by Wolverine, Loma claims that a splash guard was needed in order for the saw to be safely operated.
Because of this evidentiary showing by Loma of substantial change, the burden shifts to Burkett to establish a genuine issue of material fact. Berner, 543 So.2d at 688 (quotingSchoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala. 1985)). Burkett argues that there were no substantial changes and that his injury would have occurred regardless of the alterations made by Wolverine, because of defects in the saw as manufactured. Specifically, Burkett claims in his answers to interrogatories that the blade was inadequately guarded, that the control panel was not as informative as it should have been, and that warnings should have been attached to the saw. Even though these answers were not formally submitted in opposition to Loma's summary judgment motion, the court may consider all evidence of record when ruling on a summary judgment motion. Fountain v. Phillips, 404 So.2d 614, 618 (Ala. 1981); A.R.Civ.P. 56(c). However, the material must be admissible evidence. Ray v. Montgomery, 399 So.2d 230, 232
(Ala. 1980). Burkett's lay opinion as to the ultimate issue of proximate cause is not admissible evidence. Mathews v. Mathews,428 So.2d 51, 57 (Ala.Civ.App. 1982), cert. denied,428 So.2d 58 (Ala. 1983), C. Gamble McElroy's Alabama Evidence, § 127.01(3) (3d ed. 1977). Burkett offered, in opposition to Loma's summary judgment motion, the affidavit of his expert witness, Gerald C. Rennell. Rennell stated his opinion that the saw was defective because it did not have a blade brake, was not guarded in accord with standard B11.10-1974 of the American National Standard Institute (ANSI), and did not have a blade guard preventing contact with the blade in all of the blade's positions, and that adequate warning was not given of the saw's dangers. Rennell's opinion is also inadmissible because it does not meet the requirements of Rule 56(e), A.R.Civ.P. That Rule requires that affidavits offered in opposition to summary judgment motions must be based on personal knowledge, must set forth admissible facts, and must show affirmatively the competency of the affiant to testify as to the matters stated. Rennell's affidavit does not show that he had any personal knowledge of the condition of the saw. (Loma's expert witness, Adolph Nussbaum, stated in his affidavit that his testimony was based on personal knowledge and that he had inspected the saw.) Also, Rennell's affidavit does not show affirmatively his competency to testify. His resume, attached to supplemental answers to interrogatories that were also filed in opposition to Loma's summary judgment motion, shows his experience with machinery and his experience in regard to machinery safety, but does not show that he has any familiarity with the particular saw that injured Burkett.
Thus, all evidence offered by Burkett in opposition to Loma's contention that the saw had undergone a substantial change is inadmissible, and the court must, accordingly, consider Loma's evidence to be uncontroverted. The summary judgment in favor of Loma Machine Manufacturing, Inc., is, therefore, affirmed.
 II. Co-employees' Liability
Burkett charges the co-employee defendants with liability under Code 1975, *Page 137 
§ 25-5-11(c)(2), based on their alleged willful removal of a portion of the blade guard cover supplied by Loma, and under §25-5-11(c)(1) and (2) for their alleged willful failure to place a splash guard on the billet saw prior to Burkett's injury.
Section 25-5-14 limits co-employee civil liability to causes of action based on willful conduct, if the injured employee receives workmen's compensation. Reed v. Brunson, 527 So.2d 102
(Ala. 1988).
Under § 25-5-11(c)(2), willful conduct specifically includes:
 "The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from such removal; provided, however, removal of such a guard or device shall not be willful conduct unless such removal did, in fact, increase the danger of use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective."
As explained in the discussion of Burkett's claim against Loma, sometime after the sale of the saw to Wolverine and before Burkett's injury, the original saw blade guard was modified so that the portion of the blade exposed was increased from 15 to 30 inches. Adolph Nussbaum testified in his deposition that the change was made by Wolverine. David Styers, engineering manager of Wolverine, testified that, to the best of his knowledge, Wolverine had made all of the modifications to the saw. However, Burkett produced no evidence that any of the co-employee defendants had modified the guard. All co-employee defendants testified that the modifications to the blade cover and feed mechanism had been made before they began working at the Wolverine plant. The longest-serving co-employee had worked at the Wolverine plant for 24 years before Burkett's injury. Burkett offered no evidence contradicting the affidavits of the co-employees. Therefore, we must consider the evidence offered by the co-employees to be uncontroverted, so that no genuine issue of material fact exists as to their freedom from liability under § 25-5-11(c)(2) for the alteration of the original blade guard. Isbell v. Alabama Power Co.,477 So.2d 281 (Ala. 1985).
Next, Burkett claims that the co-employees' failure to add a splash guard prior to his injury was equivalent to the removal of a safety guard under § 25-5-11(c)(2). After Burkett's accident, a splash guard was added to the billet saw he had been operating when he was injured. Such a splash guard was not included on Loma billet saws at the time Loma sold the billet saw to Wolverine. After the adoption of the 1974 ANSI standards, Loma added to its billet saws a base guard giving protection equivalent to that given by a splash guard. Burkett alleges that co-employee David Styers had a duty to keep the saw in working order; that Neil LeMay and Jerry Powell had the duty to provide workers with safe equipment; and that Harold Martin, David Styers, and Clint Williams had a responsibility to insure that the saw complied with OSHA standards. Because of the safety responsibilities of the co-employees, their knowledge that a splash guard had been added to the other billet saw at the plant, their knowledge that a splash guard would enhance safety, and the fact that the saw was allowed to be operated without a splash guard, Burkett argues that the failure to add a splash guard was legally equivalent to the willful and intentional removal of a safety guard under §25-5-11(c)(2).
This Court has addressed § 25-5-11(c)(2) in Reed v. Brunson,527 So.2d 102 (Ala. 1988). In Reed, the plaintiff was injured when his hand was caught in a concrete mixer. He alleged that the defendant co-employees had willfully and intentionally removed a guard from the front of the mixer. Id. at 121. There was evidence that such a guard had been removed, but the Court entered summary judgment for the co-employees, holding that the removal of the front guard did not proximately cause the injury. Id. The guard removed *Page 138 
did not shield the point at which the plaintiff caught his hand. Side guards would have shielded this point, but when the mixer was installed at the plant it did not include such guards. Thus, the Court ruled that the plaintiff's injury was not "proximately caused by the defendants' removal of a safety guard or device that had been provided by the manufacturer of the mixer." Id. (Emphasis added.) Likewise, the co-employee defendants in this case did not remove a safety guard provided by the manufacturer and, thus, are not liable under §25-5-11(c)(2).
There is no duty under § 25-5-11(c)(2) et seq. on co-employees to add safety guards that the manufacturer fails to provide. Such a claimed duty is the essence of Burkett's second claim against his co-employees. Section 25-5-11(c)(2) does not require co-employees to add a safety device to compensate for the willful removal of one by previous co-employees. In § 25-5-14 the Legislature expressly provided co-employees immunity "from civil liability for all causes of action except those based on willful conduct," due to the "disruptive effect" of such suits on employee relations and the "adverse effect [of such suits on] efforts to retain existing, and to attract new industry to this state." In § 25-5-11(c), the Legislature set forth four very specific acts that may constitute willful conduct. Section 25-5-11(c)(2) provides only that the "willful and intentional removal . . . of a safety device provided by the manufacturer" falls within the Legislature's definition of "willful conduct." (Emphasis added.) The failure to add a safety device does not fit the definition of willful conduct under § 25-5-11(c)(2).
Last, Burkett claims that the co-employee defendants were guilty of willful conduct under § 25-5-11(c)(1) for failing to add a splash guard prior to his injury. Section 25-5-11(c)(1) provides that the plaintiff must show that the defendant possessed "[a] purpose or intent or design to injure another," and provides that willful conduct is shown by one who "with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent and purpose of inflicting injury." Under Reed, the intent required for §25-5-11(c)(1) is shown by "evidence tending to show either (1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or (2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions." Reed, 527 So.2d at 120. (Emphasis in original.)
This Court evaluated a claim similar to Burkett's inTurnbow v. Kustom Kreation Vans, 535 So.2d 132 (Ala. 1988). In that case, the plaintiff was injured when he fell out of the delivery van he was driving. The driver's door of the van had been damaged in an earlier accident. Because of this earlier damage, the door came open on the second occasion. Id. at 133. Following the earlier accident, the plaintiff's employer was paid for estimated repairs to the van, but, in the year that had passed between the two accidents, the supervisor never had the van repaired. The plaintiff sued his supervisor, who was responsible for the van's maintenance, under § 25-5-11(c)(1), claiming that he had "willfully allowed the van to be maintained in [a] manner . . . likely to cause . . . serious harm." Id. at 134. (Emphasis added.) This Court held that the supervisor's failure to repair the van's damaged door did not amount to willful conduct under § 25-5-11(c)(1).
The Court affirmed a summary judgment for the supervisor, because the plaintiff had produced no evidence that the supervisor had "a reason to intentionally injure [anyone]" and had produced no evidence "that a reasonable person in [the supervisor's] position would have known that injury or death . . . was substantially certain to occur because of [his] failure to have the van repaired." 535 So.2d at 134. The Court stated that perception of a risk of injury does not amount to a purpose to injure or knowledge that injury is substantially certain to follow. Id. The Court noted that the van had been driven in its damaged condition for one year without any resulting injury and that the supervisor *Page 139 
had driven the van himself knowing of the damage to the door's latch.
Burkett has produced no evidence that any of the co-employee defendants intended or had a purpose to injure anyone by their failure to add a splash guard. As in Turnbow, even though the defendant co-employees may have "perceived a risk of injury," this perception is insufficient for "a jury to infer that [they] acted with a purpose to injure another." 535 So.2d at 134. Because the saw was operated for at least 24 years without an injury, it cannot be said that any co-employee defendant had knowledge that injury was substantially certain to follow from the failure to add a splash guard.
Thus, Burkett fails on his claim under § 25-5-11(c)(1), as well as on his claims under § 25-5-11(c)(2). Accordingly, the summary judgment for the co-employee defendants is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.
[1] Under Alabama law, for purposes of workmen's compensation, a temporary employee is the employee of both his general employer (the assigning employer) and his special employer (the employer to which the worker is assigned). Marlow v. Mid South Tool Co.,535 So.2d 120 (Ala. 1988). If the conduct of the Wolverine employees named as co-defendants was not "willful," they also qualify for immunity, which is provided to co-employees under Alabama Code 1975, § 25-5-11(a), because they are "employee[s] of the same employer."