Tracy Williams appeals the trial court's summary judgment in favor of Gary Price in his action to recover damages based on personal injury brought under Ala. Code 1975, § 25-5-11 (part of the Alabama Workmen's Compensation Act). We affirm.
Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. On review of a summary judgment for a defendant, this Court views the evidence in a light most favorable to the plaintiff and resolves all reasonable doubts against the defendant. Wilson v. Brown,496 So.2d 756 (Ala. 1986). The present action was pending on June 11, 1987; therefore, the applicable standard of review is the "scintilla rule." Ala. Code 1975, § 12-21-12.
After reviewing the record before us, we find that the following material facts are not in dispute: Williams had worked for approximately eight months as assistant pressman for Central Publishing Company *Page 409 
("Central") in Birmingham, Alabama, where Price was the plant manager and a co-employee of Williams. Thomas Johnson was Williams's supervisor. During the course of Williams's employment while he was attempting to unclog the paper waste removal system,[1] his legs were crushed in the paper baler. On the day that his injury occurred, Williams had reported the blockage in the paper feed chute to Johnson, who was in charge of running the baling machine. Johnson then reported the clog to Price, who directed Johnson to have someone unclog the chute, specifically telling Johnson to leave the baler on while the chute was being unclogged — not to turn off the baling machine for any reason without permission, even though Price had been warned of the danger of allowing workers to unclog the cyclone unit while the baling machine was running. In addition, there had been posted on the baler itself next to the main switch box a notice that stated, "Do Not Turn Off Unless You Ask Personnel." Subsequently, Johnson instructed Williams to unclog the baler, providing him with the necessary tools and telling him of a pipe located on the roof to use in breaking up the clog. Prior to this time, Williams had never attempted to unclog the cyclone unit.
A fork-lift raised Williams onto the back of a semi-trailer from which he had to climb to reach the top of the building. The cyclone unit had two access points, a small hatch and a larger hatch. Once on the roof, Williams removed the lid from the smaller hatch to the cyclone unit and, using the pipe, unsuccessfully attempted to force the paper down the chute. Thereafter, Williams opened the larger hatch and, standing on a piece of angle iron next to the hatch, attempted to force paper downward into the chute with the pipe. His foot slipped off the angle iron, and he fell through the feed chute into the baler. When he reached the bottom of the chute, the baler automatically activated and crushed his legs.
Williams filed suit against Price, alleging willful, negligent, and/or wanton conduct in allowing safety devices to be removed from the baling machine and for willfully allowing the baler to be operated without such safety devices. The substance of Williams's complaint charges Price with willful conduct with the intent to injure, under Ala. Code 1975, §25-5-11; in essence, that Price acted willfully in issuing instructions not to shut down the operation of the baler while Williams attempted to unclog paper from the cyclone unit.
Alabama Code 1975, § 25-5-11, as amended, limits actions for personal injuries that an employee who is receiving benefits under the Alabama Workmen's Compensation Act can recover against an "officer, director, agent, servant, or employee of the same employer" to actions for "willful conduct" that results in, or proximately causes, injury or death. Therefore, we must determine whether there is any evidence tending to show that Williams was injured as a result of Price's "willful conduct," as that term is defined in § 25-5-11(c)(1) and (2). If there is, then the summary judgment should not have been entered.
In Reed v. Brunson, 527 So.2d 102 (Ala. 1988), this Court set out what constitutes "willful conduct":
 "Section 25-5-11(c)(1) and (2), in pertinent part, reads as follows:
 " '(c) As used herein, "willful conduct" means:
 " '(1) A purpose or intent or design to injure another; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent and purpose of inflicting injury, then he is guilty of "willful conduct."
 " '(2) The willful and intentional removal from a machine of a safety *Page 410 
guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from such removal; provided, however, removal of such a guard or device shall not be willful conduct unless such removal did, in fact, increase the danger of use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.'
 "Under § 25-5-11, an employee may be liable in damages for the death of, or injuries sustained by, a fellow employee; however, such liability can be based only on injury or death proximately caused by the offending employee's 'willful conduct.'
 "Section 25-5-11(c)(1) clearly defines 'willful conduct' in terms of a 'purpose or intent or design to injure another.' The plaintiff need not show that the co-employee defendant specifically intended to injure the person who was injured. What must be shown, however, is that the co-employee defendant set out purposefully, intentionally, or by design to injure someone, and that his actions in furtherance of that purpose, intent, or design, resulted in, or proximately caused, the injury or death upon which suit was brought. In defining 'willful conduct' in these terms, the Legislature recognized the clear distinction that has developed in Alabama between 'wanton conduct' and 'willful conduct':
 " ' "Wantonness" is the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or probably result.
 " ' "Willfulness" is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.
 " 'Therefore, in "wanton conduct" and "wanton injury" a purpose or intent or design to injure is not an ingredient; and where a person from his knowledge of existing conditions and circumstances is conscious that his conduct will probably result in injury, yet, with reckless indifference or disregard of the natural or probable consequences, but without having an intent or design to injure, he does the act, or fails to act, he would be guilty of wantonness, but not of willfulness.
 " 'But, in "willful conduct" and "willful injury" a purpose or intent or design to injure is an ingredient; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he is guilty of willfulness.'
 "Alabama Pattern Jury Instructions: Civil 29.01
(1974). See, also, Birmingham Ry. Electric Co. v. Bowers, 110 Ala. 328, 20 So. 345 (1895); Central of Georgia Ry. v. Corbitt, 218 Ala. 410, 118 So. 755
(1928); Porterfield v. Life Casualty Co. of Tennessee, 242 Ala. 102, 5 So.2d 71 (1941); English v. Jacobs, 263 Ala. 376, 82 So.2d 542 (1955); Burns v. Moore, 494 So.2d 4 (Ala. 1986)."
527 So.2d at 119-20.
The evidence in this case, when considered in a light most favorable to Williams, tends to show that Price had told Johnson not to turn off the baler while someone attempted to unclog paper from the cyclone unit, even after Price had been told by Johnson of the possible danger that could occur. Although this evidence tends to show that Price was negligent, and perhaps even wanton, in his conduct towards Williams, it fails to show that Price set out purposefully, intentionally, or by design to injure anyone. In other words, there is no evidence tending to show the existence of a state of mind on Price's part above and beyond that required to establish negligence or wantonness. See Reed v. Brunson, supra; see, also, Lynn Strickland Sales Service, Inc. v. Aero-LaneFabricators, Inc., 510 So.2d 142 (Ala. 1987).
Whereas we recognize that intent is a matter peculiarly within the province of the *Page 411 
jury and may be shown by any condition or circumstance from which it may be reasonably inferred, see Walker v. Woodall,288 Ala. 510, 262 So.2d 756 (1972), we do not think that "willful conduct," as defined in the statute, would be reasonably inferable from evidence like that introduced in this case. SeeReed v. Brunson, supra. Short of substantial certainty that injury or death would occur, a purpose, intent, or design to injure another was not intended to be reasonably inferable from evidence showing only knowledge and appreciation of a risk of injury or death.
A careful reading of the Workmen's Compensation Act reveals that the Act was promulgated to ensure that cases where a plaintiff was compelled to work under circumstances that posed foreseeable risks of harm to himself or others or circumstances from which harm could likely or even probably result would not be submitted to a jury without some evidence tending to showeither 1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or 2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his action.
There is no evidence in this case tending to show that Price had a reason to injure Williams or anyone else, nor is there any evidence to show that Williams's injury was substantially certain to follow from the actions of Price. Therefore, Williams failed to make out a prima facie case of "willfulness" as that term is defined in § 25-5-11(c)(1), and the trial court properly entered summary judgment as to § 25-5-11(c)(1).
We note Williams's argument that Price's instruction to Johnson not to use the available safety devices to disengage the baler, along with the written instructions on the baling machine not to cut off the machine without permission, rendered unavailable the safety devices that cut the power to the baling machine and therefore "removed those safety devices in violation of § 25-5-11(c)(2)." Williams attempts to equate these instructions with the willful and intentional removal of, or failure to install, a safety guard found in Bailey v. Hogg,547 So.2d 498, 500 (Ala. 1989), in which the Court held:
 "[T]he willful and intentional failure to install an available safety guard equates to the willful and intentional removal of a safety guard for the purposes of Ala. Code 1975, § 25-5-11(c)(2)."
Williams argues that § 25-5-11(c)(2) does not require a showing of intent to injure as is required under §25-5-11(c)(1). Rather, Williams argues that liability under §25-5-11(c)(2) may be established merely by presenting evidence of a willful and intentional removal of, or failure to install, a safety guard and that Price's actions in the instant case were tantamount to the willful and intentional removal of a safety device under § 25-5-11(c)(2).
In Bailey v. Hogg, supra, as in Reed v. Brunson, supra, we were dealing with safety guards or safety devices provided by the manufacturers of the machines. In the instant case, we are dealing with a co-employee's instructions concerning a safety procedure. Section 25-5-11(c)(2) specifically defines willful conduct in terms of "[t]he willful and intentional removal from a machine of a safety guard." Although we extended §25-5-11(c)(2) in Bailey v. Hogg to equate the term "removal" with "failure to install," finding the same dangers present in both situations, we cannot and will not extend § 25-5-11(c)(2) to include instructions, whether given or not given, pertaining to safety procedures. Rather, the instruction not to deactivate the baler while someone was attempting to unclog it would constitute willful conduct only if it constituted such conduct under § 25-5-11(c)(1), as interpreted by Reed v. Brunson, supra. Thus, having found no evidence of an intent to injure on the part of Price under § 25-5-11(c)(1), we must affirm the summary judgment as to § 25-5-11(c)(2).
AFFIRMED.
MADDOX, ALMON, SHORES and STEAGALL, JJ., concur.
JONES, ADAMS and KENNEDY, JJ., dissent.
[1] The paper waste removal system consisted of a floor sweeper, a shredder, a cyclone, and a baler. The floor sweeper vacuumed paper from the floor up through a chute to the roof, where the paper was shredded and then passed through a cyclone, which removed the paper from the air and allowed the paper to fall through a chute from the roof directly into the baling machine. The baler then compacted the paper into bales for disposal. *Page 412