This is a suit against co-employees arising out of a work-related accident involving a power press. The appellant, Jacqueline Harris, was employed by Temporary Alternatives, Inc., and was assigned to the third shift at SMC South, a division of Somer *Page 907 
Metalcraft Corporation. Tommy Simmons was the foreman on the third shift, and Mark Bernard was the plant manager.
On March 12, 1990, the plant received several citations for violations of the Occupational Safety and Health Act of 1970. One of the citations concerned a particular power press; it noted that the power press was not equipped with a single-stroke mechanism and that the press was unguarded. On April 19, 1990, while working on that particular power press, Harris was injured when her hand came into contact with the power press. As a result of the injury, three fingers on her right hand were amputated. She had worked at the SMC South plant for approximately 14 days prior to the accident.
Harris filed a complaint pursuant to § 25-5-11, alleging that her supervisors, Simmons and Bernard, had failed to provide her a safe place to work and/or a reasonably safe work environment and that her supervisors had failed to install safety devices on the press. The court entered a summary judgment for the defendants. Harris appeals.
Section § 25-5-14 states that the intent of the workers' compensation legislation is to provide immunity to co-employees from all civil liability, except that based upon willful conduct. "Willful conduct," for purposes of co-employee liability, means one of four limited things:
 "(1) A purpose or intent or design to injure another; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent and purpose of inflicting injury. . . .
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from such removal; . . . .
 "(3) The intoxication of another employee of the employer when the conduct of that employee has wrongfully and proximately caused injury or death to plaintiff or the plaintiff's decedent, but no employee shall be guilty of willful conduct on account of the intoxication of any other employee or other person; or
 "(4) Willful and intentional violation of a specific written safety rule of the employer after written notice to the violating employee by another employee who, within six months after the date of receipt of such written notice, suffers injury resulting in death or permanent total disability as a proximate result of said willful and intentional violation. . . ."
Section 25-5-11(c).
Harris argues that the failure to add a guard to the power press constitutes actionable conduct under § 25-5-11(c)(1) and (c)(2). Each subsection will be discussed separately, but in reverse order.
I. Section 25-5-11(c)(2)
Harris argues that the legal effect of the failure to add a safety device in this case should be the same as the legal effect of a willful removal of a safety device provided by the manufacturer of the machine. We disagree.
There is no evidence that any type of guard was provided by the manufacturer. Our cases have stated that the failure to add a guard provided by the manufacturer can constitute willful conduct under § 25-5-11(c)(2). See Bailey v. Hogg,547 So.2d 498, 500 (Ala. 1989). In Burkett v. Loma Machine Mfg., Inc.,552 So.2d 134 (Ala. 1989), this Court stated that "there is no duty under § 25-5-11(c)(2) . . . on co-employees to add safety guards that the manufacturer fails to provide." Id. at 138. Under the facts of this case, we hold that summary judgment as to the claim under § 25-5-11(c)(2) was correct.
II. Section 25-5-11(c)(1)
Harris argues that Simmons and Bernard intentionally injured her by not installing the safety guard. Under § 25-5-11(c)(1), Harris can recover from her co-employees if she can prove that she was injured by their willful conduct.
In order to meet this burden, Harris must show that, from the evidence presented, it was reasonably inferable that Simmons *Page 908 
and Bernard acted with "a purpose or intent or design to injure." See Reed v. Brunson, 527 So.2d 102, 120 (Ala. 1988). Whether there was intent is generally recognized to be a question peculiarly within the province of the jury, and intent may be shown by any condition or circumstance from which it may be reasonably inferred. Williams v. Price, 564 So.2d 408,410-11 (Ala. 1990) (citing Walker v. Woodall, 288 Ala. 510,262 So.2d 756 (1972)). In Williams, this Court stated:
 "A careful reading of the Workmen's Compensation Act reveals that the Act was promulgated to ensure that cases where a plaintiff was compelled to work under circumstances that posed foreseeable risks of harm to himself or others or circumstances from which harm could likely or even probably result would not be submitted to a jury without some evidence tending to show either 1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or 2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his action."
Id. at 411.
This Court went on to hold that, without evidence that the defendant had reason to injure the plaintiff or someone else or evidence that the plaintiff's injury was substantially certain
to follow, summary judgment for the defendant was proper.
In Burkett, supra, this Court held that the failure to add a splash guard was not "willful conduct" within the meaning of §25-5-11(c)(1). Burkett, 552 So.2d at 138-39. We found no evidence that any of the co-employee defendants in Burkett
intended, or had a purpose, to injure anyone by their failure to add a splash guard. Also, this Court stated that perception of a risk of injury does not amount to a purpose to injure or amount to knowledge that injury is substantially certain to follow. Id. at 138. Because the saw in Burkett had been operated without a splash guard for an extended period of time without an injury, this Court stated that "it cannot be said that any co-employee defendant had knowledge that injury was substantially certain to follow from the failure to add a splash guard." Id. at 139 (emphasis added).
Bernard testified in his deposition that the press had been operated without incident for three and one-half years prior to Harris's accident. Simmons testified that, in the time he had been employed by SMC, he had never known of an accident involving a press. Both men testified that they knew of OSHA citations concerning the lack of a guard on the press. However, there is no evidence that Simmons and Bernard knew to a substantial certainty that injury was likely to occur. As inBurkett, the machinery had been operated without a guard for a substantial period of time without an injury. Harris made no showing otherwise.
Harris testified, through affidavit, that Simmons was aware that she was operating the press and was aware that she had not been trained to operate the press. In accordance with our standard for reviewing a summary judgment, we resolve all factual issues in favor of the nonmovant; therefore, we assume Harris's statement to be true. Even given the truth of it, however, her statement does not indicate either that Simmons intended to injure Harris or someone else, or that Simmons knew to a substantial certainty that someone would be injured while operating the press. Harris simply has not shown any proof to rebut the defendants' prima facie showing that her injury was not caused by the "willful conduct" of Simmons or Bernard. Therefore, the summary judgment was also proper as to the claim based on § 25-5-11(c)(1).
For the reasons stated above, we affirm the summary judgment in favor of Simmons and Bernard.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur. *Page 909