Brian Ray Stewart sued two former co-employees, Arzie Grimes and his son, Russell H. Grimes, seeking damages under Ala. Code 1975, § 25-5-11(c)(1), part of the Alabama Workers' Compensation Act. Stewart alleged that the Grimeses had allowed him to come in direct contact with benzene, emitted in the form of fumes from gasoline-contaminated soil, and that they had done so with the design, intent, and purpose of causing him to develop leukemia. Stewart developed a rare form of leukemia known as acute lymphoblastic leukemia, T-cell variety.[1] After *Page 468 
a lengthy trial, in which extensive medical testimony and numerous exhibits were introduced into evidence, the jury found for Stewart, awarding him $5,250,000 in compensatory damages ($3,000,000 in past damages and $2,250,000 in future damages) and $3,000,000 in punitive damages. The Grimeses moved for a judgment notwithstanding the verdict, or, in the alternative, a new trial or remittitur. The trial court remitted $1,250,000 of the punitive damages award and entered a judgment for Stewart for $7,000,000. The court made that judgment final pursuant to Rule 54(b), A.R.Civ.P. The Grimeses appealed. Stewart cross-appealed, challenging the remittitur.
The dispositive issue in this case is whether there was sufficient evidence to submit Stewart's claim to the jury. If the evidence was not sufficient, then the trial court erred in denying the Grimeses' motion for a judgment notwithstanding the verdict and we must reverse the judgment.
Section 25-5-11(b) provides in pertinent part:
 "If personal injury [which includes an occupational disease, § 25-5-1(9)] or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any . . . employee of the same employer . . . the employee shall have a cause of action against the person. . . ."
Section 25-5-11(c)(1) provides:
 "As used herein, 'willful conduct' means any of the following:
 "(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of 'willful conduct.' "
The proof necessary to sustain a claim under this section was clearly set out by this Court in Reed v. Brunson,527 So.2d 102, 120 (Ala. 1988):
 "In § 25-5-14 the Legislature expressed concern over the rising costs of litigation among co-employees, as well as the disruptive effect that such litigation can have on workers. That concern indicates to us that the Legislature intended for an injured plaintiff to prove more than simply that he was compelled to work under circumstances that posed a foreseeable risk of harm to him or others (or circumstances from which harm could likely or even probably result), in order to maintain his action based on the 'willfulness' of a co-employee defendant. To the contrary, we believe the Legislature sought to ensure that these kinds of cases would not be submitted to a jury without at least some evidence tending to show either 1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or 2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions. (A purpose, intent, or design to injure another was not intended to be reasonably inferable from evidence showing only knowledge and appreciation of a risk of injury or death short of substantial certainty that injury or death would occur.) We think it safe to say that negligent, or even wanton, conduct is much more prevalent in the work place than conduct actually intended to cause injury or death. We think the Legislature has recognized this also, and, in so doing, has placed upon an injured worker a heavier burden in proving a purpose, intent, or design to injure on the part of a co-worker. This comports with the manifest intent of *Page 469 
the Legislature that litigation among co-employees be restricted to those situations in which the plaintiff can show something more than what is usually sufficient to make out a case of negligence or wantonness."
(Emphasis in original.)
It is undisputed that neither Arzie nor Russell Grimes had any known reason or motivation to harm Stewart, or anyone else. The record clearly shows that, at least outwardly, Stewart had a good personal relationship with the Grimeses. Therefore, to submit his claim to the jury, Stewart had to introduce sufficient evidence to show that the Grimeses had allowed him to come in contact with gasoline-contaminated soil knowing that it was substantially certain that that contact would result in Stewart's developing leukemia.[2]
As previously noted, the evidence introduced during the trial was extensive. Without our setting this evidence out in detail, suffice it to say that, viewed in the light most favorable to Stewart, it did not show that either of the Grimeses, or anyone else for that matter, could have foreseen with any degree of certainty, much less substantial certainty, that Stewart's limited exposure to fumes emitted from gasoline-contaminated soil would cause him to develop leukemia. Although Stewart's medical expert testified that Stewart had developed leukemia as a result of his contact with benzene during his 14-month employment with ATEC (we assume for purposes of this appeal that that testimony supported Stewart's claim that his illness was work-related), the Grimeses' medical expert testified that Stewart's illness was not related to his limited exposure to benzene while working at ATEC. The medical evidence introduced at trial, although indicating that certain high concentrations of benzene are carcinogenic, did not establish any causal link between the kind of limited contact experienced by Stewart (contact with gasoline fumes) and leukemia, much less the rare form of leukemia that he developed. Such a conflict of opinion within the medical community concerning the cause of leukemia, when considered in light of the undisputed evidence that Russell Grimes performed the same kind of work as Stewart, under the same conditions, and that no employee of ATEC, or anyone else performing similar work, had ever been known to develop leukemia by smelling fumes from gasoline-contaminated soil, precludes a judgment for Stewart, as a matter of law. See Harris v. Simmons, 585 So.2d 906 (Ala. 1991); Merritt v. Cosby, 578 So.2d 1242 (Ala. 1991); Lee v.Ledsinger, 577 So.2d 900 (Ala. 1991); Beville v. Spencer,568 So.2d 1224 (Ala. 1990); Pressley v. Wiltz, 565 So.2d 26 (Ala. 1990); Landers v. O'Neal Steel, Inc., 564 So.2d 925 (Ala. 1990); Williams v. Price, 564 So.2d 408 (Ala. 1990); Bean v.Craig, 557 So.2d 1249 (Ala. 1990); Burkett v. Loma MachineManufacturing, Inc., 552 So.2d 134 (Ala. 1989); Turnbow v.Kustom Kreation Vans, 535 So.2d 132 (Ala. 1988). Simply put, given the state of the evidence in this case, it would strain logic beyond the breaking point and run completely afoul of the clearly expressed intent of the legislature for us to hold that the evidence was sufficient for a jury to find that Arzie Grimes (who received a two-year degree in basic engineering) and Russell Grimes (who graduated from high school and completed a year and a half of non-chemistry-related college courses and who performed the same kind of work as Stewart) ordered Stewart to sniff gasoline-contaminated soil samples knowing that his developing leukemia was a substantial certainty.
The trial court erred in denying the Grimeses' motion for a judgment notwithstanding the verdict. The judgment is, therefore, reversed and the case is remanded. Stewart's cross-appeal is dismissed as moot.
1920807 REVERSED AND REMANDED.
1920864 DISMISSED. *Page 470 
HORNSBY, C.J., and ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.
SHORES and KENNEDY, JJ., concur in the result.
[1] Stewart and the Grimeses were employed by ATEC Associates, Inc. ("ATEC"), a national engineering and consulting company. Arzie Grimes, who received a two-year associate's degree in basic engineering from Snead State Junior College in Boaz, Alabama, was the manager of the office in which Stewart worked. Russell Grimes, who graduated from high school and completed a year and a half of non-chemistry-related college courses, was a job foreman. Stewart's responsibilities with the company included testing soil samples that had been taken from under and around exhumed underground gasoline storage tanks. Although these samples were analyzed to determine the extent of gasoline contamination, if any, Stewart was also instructed to sniff the samples to see if he could detect the presence of gasoline. Russell Grimes performed this same kind of work, with the consent of his father, in the same manner and under the same conditions as Stewart did.
Stewart also sued ATEC, seeking workers' compensation benefits; that claim remains pending below.
[2] Because Stewart's claim was not pending on June 11, 1987, the applicable standard for reviewing his compensatory damages claim is the "substantial evidence" rule. See Ala. Code 1975, §12-21-12, and West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989). However, the applicable standard for reviewing Stewart's punitive damages claim is the "clear and convincing evidence" rule. See Ala. Code 1975, § 6-11-20.