**In re Edward Dwight JENKINS, Debtor.**

**Greg Fowler, Plaintiff,**

v.

**Edward Dwight Jenkins, Defendant.**

**Bankruptcy No. 99–42952–JJS–7.
Adversary No. 00–40005–JSS.**

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

Jan. 18, 2001.

---

Daniel D. Sparks, Christian & Small, L.L.P., Birmingham, Alabama, for plaintiff-creditor.

Robert D. McWhorter, Jr., Inzer, Haney & McWhorter, P.A., Gadsden, Alabama, for defendant-debtor.

Rocco J. Leo, Birmingham, Alabama, Chapter 7 Panel Trustee.

### MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

This Adversary Proceeding comes before this Court for trial for a determination of dischargeability of a debt for willful and malicious injury by the debtor under 11 U.S.C. § 523(a)(6). By consent, the parties have tried the issue of the preclusive effect of the state court judgment

through briefed argument, together with the transcripts, depositions, and exhibits as evidence upon those issues not necessary to the state court action but required for adjudication under § 523(a)(6). With the close of all the evidence, this Court took the matter under advisement and now renders its findings of fact and conclusions of law as set forth in this Memorandum Opinion in accordance with Fed. R.Bankr.P. 7052, *applying* Fed.R.Civ.P. 52. This Court concludes that the willful conduct to bypass a safety guard, with the knowledge that the bypass would likely or probably cause injury, and which proximately caused injury, does not rise to the level of intentional tort to cause injury, which is required for the debt to be declared nondischargeable.

## JURISDICTION

This Adversary Proceeding seeks this Court to determine the dischargeability of a willful and malicious injury allegedly caused by the Defendant–Debtor's act or omission. Pursuant to 28 U.S.C. §§ 157(a), 1334(a), 1334(e), and the Standing Order of Reference in the Northern District of Alabama (Ord.Ref.(N.D.Ala. July 17, 1984)), this Court has original and exclusive jurisdiction to hear and determine all cases under title 11. This Adversary Proceeding is brought under 11 U.S.C. §§ 523(a)(6), 523(c) and Fed. R.Bankr.P. 7001(6), and the order of reference in this case has not been withdrawn, thereby in accordance with 28 U.S.C. § 157(b)(1), this Court possesses original and exclusive jurisdiction to determine the dischargeability of this debt. In accordance with 28 U.S.C. § 157(b)(2)(I) this Adversary Proceeding constitutes a core proceeding in which this Court is empow-

ered to enter appropriate orders and judgments. Venue of this Adversary Proceeding is proper and has not been challenged. *See* 28 U.S.C. § 1409(a); Bankr.L.R. 1070–1, and 1073–1(a). Thereby, this Court concludes, as the parties have jointly consented, that subject matter, in personam, and in rem jurisdiction is proper in this tribunal.

## FACTUAL BACKGROUND and PROCEDURAL HISTORY[1]

The Plaintiff–Creditor, Greg Fowler, was a meat department employee at the Gregerson's Grocery Store in Oneonta, Alabama. Mr. Fowler's immediate supervisor in the meat department was Mr. Tim Lyons, and Mr. Jenkins was the store manager. On Christmas Eve of 1996, while performing his duties as an employee, Mr. Fowler sustained injuries to his right hand while slicing hams with a meat saw at the store.

Mr. Fowler's injuries are permanent in nature and resulted in a complete loss of the end of one finger and an injury to a second. Mr. Fowler's index finger was amputated through the middle phalanx, and additional surgery was done on the flexor tendon and digital nerve of the middle finger, which was at the time of the initial surgery, left intact. After the initial middle finger surgery was unsuccessful, the Plaintiff's treating physician recommended the amputation of the middle finger at the dip joint.[2]

■ Mr. Fowler brought the state court action against Mr. Jenkins pursuant to Ala.Code § 25–5–11, which provides liability for injuries sustained by the willful conduct of a co-employee by removal of a safety guard which causes injury. Such

---

1. The factual background and procedural history is taken by and large from an amalgam of the Plaintiff–Creditor's Trial Brief, (Pl.Br., pp. 2–5, Doc. No. 20), and the Defendant–Debtor's Trial Brief. (Def.Br., pp. 6–19, Doc. No. 21). References to the transcripts are omitted.

2. Although the parties' Trial Briefs fail to resolve the ambiguity of whether the middle finger was amputated, such ambiguity was resolved at the state court trial. After overcoming the fear of the loss of another finger, Mr. Fowler consented to the amputation of a portion of the middle finger approximately six months after the injury. (Pl.Ex.6, Tr.Trans., pp. 68–72).

action arises in the Workers Compensation Act as enacted by the Alabama State Legislature, although such action is not a claim for worker's compensation. Rather, the action is one in tort for damages by an exception to the qualified immunity of a co-employee under Ala.Code § 25–5–11(a). *See Johnson v. Asphalt Hot Mix,* 565 So.2d 219 (Ala.1990). The cause of action is one under joint liability of a third party (supervisory co-employee) with that of the employer. Such cause of action requires that there be willful conduct by the co-employee. Ala.Code § 25–5–11(b). Willful conduct in regards to a safety guard is defined as follows:

> The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.

Ala.Code § 25–5–11(c)(2) (Michie, 1975).

 The Alabama Supreme Court extended the definition to include that the failure to repair a safety device by a co-employee, who was responsible for the safe operation of the machine and was on notice that such device was malfunctioning, not installed, not operational, actually removed, or in need of maintenance or repair equated to the "intentional removal" of such safety feature. *Bailey v. Hogg,* 547 So.2d 498 (Ala.1989); *Harris v. Simmons,* 585 So.2d 906 (Ala.1991); *Harris v. Gill,* 585 So.2d 831 (Ala.1991); *Moore v. Reeves,* 589 So.2d 173 (Ala.1991). As a general rule, a co-employee does not owe a duty to provide a safe work environment to another employee and thereby cannot be liable for failing to provide a safe work environ-

ment. That duty rests squarely upon the employer. However, case law does permit recovery against a supervisory co-employee when he/she has voluntarily assumed or was delegated such employer's duty by his/her position, oversight, or control. *Harris v. Hand,* 530 So.2d 191 (Ala.1988); *Kennemer v. McFann,* 470 So.2d 1113 (Ala.1985).

At the time of his injury, Mr. Fowler was eighteen (18) years of age. His duties at Gregerson's Grocery Store included wrapping and packaging meat and cleaning the counter in the meat department. Mr. Fowler only occasionally used the meat saw that was the subject matter of the state court action and this Adversary Proceeding. Moreover, Mr. Fowler had limited instruction as to any particular safety hazards associated with the meat saw. At the time of this accident, as Mr. Fowler was cutting a bone-in ham the shank twisted up into the blade which threw Mr. Fowler's hand into an unguarded meat saw blade. Mr. Jenkins was the store manager at the Oneonta Gregerson's Grocery Store at the time of this incident. Mr. Jenkins testified at the state trial that he, as the store manager, was responsible for the safety of the employees. Mr. Jenkins further testified that at the time of this incident, Mr. Fowler, was an eighteen-year-old after school employee who was neither an authorized nor titled meat cutter. Although acknowledging that Mr. Fowler was not in fact a titled meat cutter, Mr. Jenkins also testified that at the time of this accident, he knew Mr. Fowler was cutting meat.

There was some dispute over the working mechanism of the meat saw guard. Employees described the guard as being one that would begin to slide downward and as not being able to stay in place. In response to this continuing condition of the meat saw guard, the guard was raised to its highest position and there, tied up with butcher twine. Mr. Fowler testified that the guard was tied up at the time of the accident. Mr. Fowler also testified that

Mr. Jenkins knew the guard was tied up and knew that it was tied up on the day of his accident, this testimony being denied by Mr. Jenkins. Additionally, Mr. Tim Lyons, the meat department supervisor, testified that on the day of Mr. Fowler's accident, the meat saw guard was tied up and raised to its highest position. Mr. Lyons further testified that Mr. Jenkins absolutely knew that the meat saw guard was tied up, knowledge of which Mr. Jenkins wholly denied.

Mr. Fowler proceeded to a trial by jury alleging that Mr. Jenkins was on notice that the saw blade's safety guard was not operating properly and the Mr. Jenkins failed to have the guard properly maintained or repaired. On August 10, 1999, after a polling of the jury and a unanimous jury verdict being issued, the jury's verdict found Mr. Jenkins liable unto Mr. Fowler for the sum of $100,000.00 for the cause of action under Ala.Code § 25–5–11. To return a verdict in favor of Mr. Fowler and against Mr. Jenkins, the jury, by the jury charge, had to find the following:

(1) that the safety device existed on a machine used in the work place of the plaintiff;

(2) that the safety device on the machine was on the machine to prevent injury;

(3) that the safety device on the machine was

 (A) intentionally, willfully, or deliberately removed;

 (B) it was intentionally, or willfully bypassed [which renders it removed]; or

 (C) there was a willful or intentional failure to maintain or repair that safety device so that it amounted to a removal;

(4) that the defendant, Mr. Jenkins, was in a supervisory position over the plaintiff with duties of providing the plaintiff with a safe place to work;

(5) that the defendant, knew or should have known that the safety device had been removed from the machine; and

(6) that the removal of the safety device, the intentional removal of the safety device proximately caused the injury that the plaintiff suffered in this case.

Jury Charge, Pl.Exh. 1. The $100,000.00 jury verdict is the amount of money the jury found to be a reasonable compensation to Mr. Fowler for the injuries he sustained as a result of the actions of Mr. Jenkins. Thus, the willful conduct of Mr. Jenkins proximately caused the injuries suffered by Mr. Fowler.

■ Mr. Jenkins filed for Chapter 7 relief on September 28, 1999. In accordance with 11 U.S.C. § 523(c), unless the creditor seeks a timely adjudication, a claim for an alleged willful and malicious injury by the debtor unto a creditor or the creditor's property will be discharged under a Chapter 7 discharge. Upon that basis, the Mr. Fowler instituted this Adversary Proceeding on January 4, 2000, the last date upon which such complaint could be filed. To be successful in establishing that a particular debt qualifies for the exception to a discharge for a debt that accrues as a result of a "willful and malicious injury by the debtor," under 11 U.S.C. § 523(a)(6), the creditor as plaintiff must prove, by a preponderance of the evidence, that:

(1) the Debtor committed a wrongful and intentional act;

(2) the act necessarily (proximately) caused the injury to the creditor;

(3) the Debtor acted with the specific intent to cause injury; and

(4) the act of the Debtor was without just cause or excuse.

*See, Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (clarifying that there is a specific intent requirement); *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (clarifying that the standard of proof in dischargeability complaints is the preponder-

ance of the evidence standard and not clear and convincing); *see also, Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) (*quoting Bromage v. Prosser,* 4 Barn. & Cress. 247, 107 Eng.Rep. 1051 (K.B.1825) (defining malice)); *Hoskins v. Yanks (In re Yanks),* 931 F.2d 42 (11th Cir.1991); *Lee v. Ikner (In re Ikner),* 883 F.2d 986 (11th Cir.1989); *Sunco Sales, Inc. v. Latch (In re Latch),* 820 F.2d 1163 (11th Cir. 1987); *American Cast Iron Pipe Co. v. Wrenn (In re Wrenn),* 791 F.2d 1542 (11th Cir.1986).[3] It is upon this standard of factors that this Court is called upon to apply the state court judgment. Where this Court finds that the state court judgment is silent, and thereby has no preclusive effect, the parties submit the state court transcripts, depositions, and exhibits to this Court as evidence.

## ADMISSIBILITY OF FORMER TESTIMONY

Pursuant to Fed.R.Evid. 801(c), trial transcripts and depositions are hearsay. *U.S. v. Salerno,* 505 U.S. 317, 320–21, 112 S.Ct. 2503, 2506–07, 120 L.Ed.2d 255 (1992). Such hearsay falls into the category of former testimony under Fed.R.Evid. 804(b)(1) if the adverse party to the declarant's statement was afforded the opportunity to cross-exam the declarant in the former testimony. *U.S. v. Deeb,* 13 F.3d 1532, 1536 (11th Cir.1994); *U.S. v. Fernandez,* 892 F.2d 976, 981 (11th Cir.), *cert. dismissed,* 495 U.S. 944, 110 S.Ct. 2201,

109 L.Ed.2d 527 (1990). Here, both parties were afforded the opportunities to develop direct, cross, and redirect examination of the respective declarant-witnesses.[4]

On November 7, 2000, this Court entered its ruling upon the transcripts, deposition, and exhibits which admitted such into evidence, closed the time to submit evidence and testimony, and took this matter under advisement. (Ruling, Doc. No. 22). In accordance with Rule 804(b)(1), former testimony given as a witness is not excluded by the hearsay rule so long as the declarant is unavailable as a witness in the present action and the party against whom the testimony is presently being offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Here, neither party has raised issue with whether any of the declarant-witnesses before the state court are available or unavailable. Thereby, this Court finds and concludes that both the Plaintiff and the Defendant have waived the objection to the transcribed testimony being offered of the declarant-witnesses. Since the entry of this Court's order of November 7, 2000 admitting the evidence, neither the Plaintiff nor the Defendant has appeared upon the record or moved this Court in objection to the admissibility or requesting the striking of the evidence proffered by either party.

However, due to the requisite review under Fed.R.Evid. 103(d), this Court is not precluded from taking notice of plain errors that affect substantial rights even though such was not brought to the atten-

---

**3.** These four factors are gleaned from the cited cases. The Ninth Circuit supports such a four factor definition analysis for dischargeability determinations under § 523(a)(6). *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir. 1986) (*citing In re Held,* 734 F.2d 628, 629–30 (11th Cir.1984)). The Ninth Circuit had to refine this original definition due to the Supreme Court opinion of *Grogan. In re Bammer,* 131 F.3d 788, 791 (9th Cir.1997). That circuit opinion was impliedly overruled by the Supreme Court's latest opinion of *Kawaauhau,* thus creating a further refinement of the

four factors. *See In re Branam,* 205 F.3d 1350, 1999 WL 1206656, at *1 (9th Cir. Dec. 15, 1999) (unpub.opin.); *In re Molina,* 228 B.R. 248, 251 (9th Cir. BAP 1998).

**4.** Due to the ability to pursue one's respective rights to direct, cross, and redirect of the declarant's former testimony, the residual exception to the hearsay rule is inapplicable. Fed.R.Evid. 807 (*formerly* Fed.R.Evid. 804(b)(5)).

tion of the court. In accord with the holding of the Supreme Court in *Salerno,* there is not an implicit waiver of the "similar motive" requirement by a party's failure to object or raise issue with the introduction of former testimony. *Salerno,* 505 U.S. at 321, 112 S.Ct. at 2507. Strict adherence to the hearsay rules may result in a 'slavishly literal fashion' for reading evidentiary rules, but that is precisely what the Supreme Court held to be Congressional intent as toward hearsay evidence. *Ibid.* Without a finding of "similar motive," the transcripts and depositions cannot be admissible under Rule 804. That is because the party(ies) presenting the transcripts or depositions must have possessed a similar motive to "develop the testimony by direct, cross, or redirect examination." *Id.* at 320, 112 S.Ct. at 2506.

The reason the parties stated for proceeding to trial merely upon the transcripts, depositions, and legal briefs was to afford all parties and the court an economical means of adjudicating this matter. Although such is a noble reason, "[t]his Court cannot alter evidentiary rules merely because litigants might prefer different rules in a particular class of cases." *Ibid* (*citing Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 524, 109 S.Ct. 1981, 1982, 104 L.Ed.2d 557 (1989)). Based upon the above, this Court must endeavor to determine whether the 'availability' of the witnesses requires the prior testimonial evidence be excluded and whether the litigants held respective 'similar motives' between the prior testimony and the present proceeding. To ensure a complete review under Evidence Rule 103, this Court will also review the availability or unavailability of the declarant(s).

First, it must be conceded by the litigants that the declarants are available. Neither litigant has presented any showing of the unavailability of the witnesses. Thereby, this Court must determine how the proponents of the hearsay can present such as admissible evidence. There appear to be three distinct but overlapping avenues available, all of which appear evident in this proceeding. First, waiver of the party's right to cross-examination of the declarant-witness. *See U.S. v. Deeb,* 13 F.3d 1532, 1539 (11th Cir.1994). Here, the central questions that need to addressed is whether the cross-examination of the declarant was available to the adverse party upon the declarant's statement, if so, did such cross-examination render the prior testimony sufficiently trustworthy.

Foremost, the Defendant and the Plaintiff both were afforded the opportunity to cross-exam the witnesses and for redirect upon their respective witnesses in the prior testimony. At the prior taking of the testimony, the parties did utilize their right to cross-examination of the declarants. There is no indication upon the transcripts of the prior trial or the deposition that places the prior testimonies in any light of untrustworthiness. Further, both parties expressly waived their respective right to cross-examination and redirect of the declarants by their Evidence Statements in the record. (Pl.Evid.Stat., Doc. No. 16), (Def.Evid.Stat., Doc. No. 19). Upon that, this Court finds that the parties have mutually waived their right to cross-examination and redirect.

Secondly, a demonstration of unavailability is generally not required where it is appears that the utility of trial confrontation is so remote that the production of an apparently available declarant is not required. *U.S. v. Inadi,* 475 U.S. 387, 400, 106 S.Ct. 1121, 1129, 89 L.Ed.2d 390 (1986); *Ohio v. Roberts,* 448 U.S. 56, 65, n. 7, 100 S.Ct. 2531, 2538, n. 7, 65 L.Ed.2d 597 (1980); *Dutton v. Evans,* 400 U.S. 74, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970). Here, the parties fully utilized their ability to cross-examination and redirection of the prior testimony. Again, both parties expressly stated a position and intent that no further testimony or evidence, beyond that presented in the prior state court trial and deposition, would be needed or desired. In short, the

parties rested their respective cases-in-chief and in-rebuttal upon the prior state court testimony and exhibits. Thereby, this Court concludes that there would be no utility for either party of a trial confrontation and production of the seemingly available declarants.

The final manner in which this Court could determine that the unavailability requirement for former testimony of a declarant has been met is with regard to the language of Fed.R.Evid. 804(a), defining the term "unavailability." That term is defined as " "unavailability as a witness" includes situations in which...." By using the term "includes," Congress did not make the listing under Rule 804(a) an all inclusive list. Rather, Congress afforded unto the courts a manner in which the court, in its discretion and upon the nexus of facts in a particular case, can make a determination that other sufficient grounds exist that render the unavailability requirement satisfied. Upon the foregoing, this Court has already met that discretionary finding. As to the issue of the declarant-witnesses unavailability, the parties have satisfied that requirement.

This Court must next turn to the analysis of whether the adverse party to the declarants' statements had a "similar motive" in developing the testimony, cross-examination, and redirect. In the state court action, the plaintiff possessed the motive of showing that the defendant was personally liable as a supervisory co-employee for the willful conduct of a removal of the safety guard on the meat cutter. In the title 11 dischargeability action, the plaintiff possess a strikingly similar motive. As in the case *sub judice*, the plaintiff possesses the motive of showing that the actions of the debtor injured the plaintiff and that those actions were done both willfully and maliciously. By the statutory exceptions to the general applicable laws, the plaintiff seeks to fix against the defendant and debtor a personal liability as to the plaintiff's injuries. Obversely, the defendant and the debtor possess a similar motive in both actions to show that personal liability should not be found and/or continue against the defendant and debtor. Upon this Court's review of the parties' 'similar motives' regarding the developing of the former testimony, both litigants were afforded full opportunities and held similar motives respectively, to develop the testimony of the declarant-witnesses in regards to the requisite issues under Ala.Code § 25–5–11 as well as 11 U.S.C. § 523(a)(6). Therefore, after a review of the admissibility of the former testimony of the declarants this Court finds and concludes that it is not in plain error to proceed and the former testimony of the declarants is admissible and admitted without objection.

■■■ Alternatively, the former testimony is likewise admissible pursuant to the residual exception rule of Fed.R.Evid. 807. That rule provides that a statement that is not specifically covered by Rule 803 or 804 can be admissible if a determination is made that: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) the statement is offered as evidence of a material fact; (3) the statement is more probative than any other evidence which the proponent can procure; and (4) the general purposes of these rules and the interests of justice will best be served by admitting the statement. The final requirement is that a statement cannot be admitted under Rule 807 unless the adverse party to that statement is given notice in advance of trial and a fair opportunity to meet such statement. The final requirement has clearly been met in this proceeding through the multiple conferences, reports, and meetings held between the parties, in court, and in filings on record in this proceeding.

■■■ Through the above review of the applicability of Rule 804, this Court has already determined that the state court trial transcripts and the deposition possesses the requisite guarantees of trustworthiness, and that the statements by the witnesses in the trial transcripts and depo-

sition are being offered as evidence of a material fact at issue. Because both parties are not presenting any additional or other evidence upon the record or in open court, this Court concludes that the statements offered in the trial transcripts and deposition are more probative than any other evidence. Therefore, if the 'availability' of a declarant renders the transcripts or deposition as statements not specifically covered by Rule 804, upon the above findings and conclusions, the former state court transcripts and the deposition are admissible pursuant to Rule 807 under this narrow application. With the initial evidentiary issues resolved, this Court now considers whether the state court jury verdict and judgment should have any preclusive effect.

## DISCUSSION AND ANALYSIS

 The preclusive effect of a prior adjudication falls into one of two categories. First, claim preclusion, which historically has been referred to *res judicata*, prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties regardless of whether they were asserted or determined in the prior proceeding. Claim preclusion relies upon a final judgment on the merits which thereby will preclude the parties "from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308, (1980). Second, issue preclusion, historically seen as collateral estoppel, precludes the re-litigation of the same issues between the same parties in different causes of action. Issue preclusion relies upon the findings of fact actually litigated in one lawsuit, and the effect of those findings upon subsequent litigation which involves a different cause of action but arising out of the same or virtually same nexus of operative facts. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

## CLAIM PRECLUSION or
### *RES JUDICATA*

 The doctrine of claim preclusion intends to relieve litigants of multiple lawsuits, while at the same time preventing inconsistent decisions and encouraging the reliance on previous adjudications. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980) (*citing Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1876)). "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* at 94, 101 S.Ct. 411. As to the dischargeability of a debt, the state court judgment entered in favor of the Plaintiff–Creditor does not give rise to a claim preclusive effect. Claim preclusive effect of *res judicata* does not apply in dischargeability actions as it would inspire the needless litigation which forces "an otherwise unwilling party to try § 17 [dischargeability] questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future." *Brown v. Felsen*, 442 U.S. at 135, 99 S.Ct. at 2211. In *Brown*, the Supreme Court holds that the Bankruptcy Court may consider evidence that is extrinsic to the judgment and the state court record of a prior suit in its determinations whether a debt liquidated to a judgment in a state court proceeding is dischargeable.

Mr. Fowler contends that the state court judgment is due to be given claim preclusion, or *res judicata*, effect on the basis that the Plaintiff, in state court, met his burden of proof on all elements and thereby need not again prove or establish any liability from the Defendant–Debtor, Mr. Jenkins. This Court must decline to be persuaded by such argument. As can be seen by this Court's review of the procedural history, the causes of action are not similar. Further, as in *Allen v. McCurry*, claim preclusion is only available upon a final judgment thereby barring the relitigation of the "issues that were or could

have been raised in that action." *Allen v. McCurry*, 449 U.S. at 94, 101 S.Ct. at 414–15. Although the Supreme Court in *Brown v. Felsen*, hypothesized that a plaintiff could be forced to bring needless litigation in state court to try dischargeability questions on a "mere possibility that a debtor might take bankruptcy in the future," *Brown v. Felsen*, 442 U.S. at 135, 99 S.Ct. at 2211,[5] this Court does not find such possibility available to a plaintiff.

 Rather, this Court adopts the *In re Tatge*, 212 B.R. 604, 609 (8th Cir. BAP 1997) holding that finds such a needless litigation would not rise to a case or controversy because the requisite facts, (*i.e.*, the filing of a title 11 petition, etc.), are not yet apparent and thereby the cause of action would not be ripe for adjudication.[6] *See also In re Tague*, 137 B.R. 495 (Bankr. D.Colo.1991). Additionally, this Court has previously determined, and reiterates that it is the United States Bankruptcy Court that Congress intended to be the sole arbiter of dischargeability causes of action because it is that tribunal that exclusively adjudicates discharge, especially in reference to those pleaded under 11 U.S.C. §§ 523(a)(2), (a)(3), (a)(4), (a)(6), and (a)(15). 11 U.S.C. § 523(c); *see also In re Milburn*, 218 B.R. 862, 865–66 (Bankr. W.D.Ky.1998) (§ 523(a)(5) determinations should be brought in bankruptcy court); *In re Crawford*, 183 B.R. 103, 107 (Bankr. W.D.Va.1995) (bankruptcy court is the appropriate tribunal for § 523(a)(5) determinations).[7] Thus, this Court determines that claim preclusion cannot be applicable in that a plaintiff in state court should not have raised or have litigated the issue of dischargeability of an injury allegedly caused by a willful and malicious act by the debtor. However, in cases wherein the determination of dischargeability has been permitted to be raised and litigated in state court, the Supreme Court doctrine of *Rooker–Feldman* would preclude a bankruptcy court from reviewing or relitigating the issue of dischargeability.[8]

5. As the central concern of the Supreme Court in *Brown v. Felsen* was the preservation of the bankruptcy court's exclusive jurisdiction to determine dischargeability of debts, the hypothetical situation raised by the Supreme Court should not be seen to render unto a plaintiff the ability to determine, prior to a petition under title 11, whether the debt would be dischargeable.

6. This Court additionally supports the analysis *infra* that state court judgments declaring a debt nondischargeable bar relitigation of that issue in the bankruptcy Court under the doctrine set forth by the Supreme Court in *Rooker* and *Feldman*, except for very narrow exceptions. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) ("no court of the United States, other than this court could entertain a proceeding to reverse or modify [a state court] judgment for errors. . . ."); *District Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (Except for the Supreme Court, federal courts are "without authority to review final determinations of [a state court] in judicial proceedings."). Federal bankruptcy courts are only possessed of original jurisdiction and cannot exercise appellate jurisdiction over a state court decision. See 28 U.S.C. §§ 151, 157, 1257, and 1334.

7. Both *Milburn* and *Crawford* hold state court judgments of nondischargeability bar relitigation of that issue in the bankruptcy court. Both courts opined that the appropriate tribunal was the bankruptcy court, but because the debtors did not seek removal or raise appropriate defenses in the state court proceeding, the bankruptcy court was required to give full effect of the judgment, even if such judgment was erroneous or without jurisdiction. The only alternative left for the debtors was the state court right of appeal and ultimately Supreme Court review under the *Rooker–Feldman* doctrine. *See also Matter of Brady, Tex. Mun. Gas Corp.*, 936 F.2d-212 (5th Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991) *Besing v. Hawthorne (Matter of Besing)*, 981 F.2d 1488, 1496 (5th Cir. 1993); *see generally, Federated Dep't. Stores v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *In re Wilson*, 116 F.3d 87, 90 (3rd Cir.1997).

8. *Milburn*, 218 B.R. at 865–66; *Crawford*, 183 B.R. at 107; *Berry v. Berry*, 1996 WL 684405, at *1 (D.Conn., Aug. 16, 1995) (upholding state court determination debt was discharged under § 523(a)(15)); *Odom v. Columbia Univ.*, 906 F.Supp. 188, 195–96 (S.D.N.Y. 1995) (defenses cannot be raised in federal court to attack a state court judgment under *Rooker–Feldman*); *In re Mendez*, 246 B.R.

In application to the case *sub judice*, Mr. Fowler does not assert, and the state court jury charge does not bear out the fact that this debt's dischargeability has been litigated or fully adjudicated through the prior judgment. The prior judgment is only in regards to fixing liability under the Alabama Workers' Compensation Act for an injury incurred through the willful removal of a safety device by a co-employee to whom the employer's duty to provide a safe work place had either been assumed and/or delegated. Had the parties actually pleaded, litigated, and fully adjudicated the dischargeability claim, even though such claim was not ripe for adjudication, the application of the *Rooker–Feldman* doctrine would bar the relitigation of that claim in this bankruptcy court. Because such did not occur, this Court determines and concludes that claim preclusion is not available unto Mr. Fowler.

### ISSUE PRECLUSION or COLLATERAL ESTOPPEL

This Court finds Mr. Fowler's argument for issue preclusion more persuasive. Under the doctrine of issue preclusion, the bankruptcy court is not required to redetermine all of the underlying facts of a state court judgment. Issue preclusion encourages parties to present their best arguments upon the issues in question, in the first instance. By so doing, the parties increase the judicial efficiency of all tribunals concerned. This theory rests upon the analysis that there is no reason to presume the parties will not vigorously present their case on the issues necessary to the prior state court proceeding, or that the bankruptcy court will be any more accurate than the prior court in the determination of the requisite facts. In short, there is no reason to permit the relitigation of facts that have been previously litigated and which were necessary to the outcome of the prior litigation.

■ The Supreme Court has expressly clarified the applicability of issue preclusion in bankruptcy court proceedings to determine the dischargeability of a debt. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Supreme Court, after acknowledging that virtually all Courts of Appeals find issue preclusion applicable in dischargeability actions, "... now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Id.*, at 284–85 n. 11, 111 S.Ct. at 658, n. 11.

Of particular import to the case *sub judice* is the Supreme Court's unequivocal overruling of the Ninth Circuit's "rebuttable presumption" application of prior judgments. *In re Houtman*, 568 F.2d 651, 653 (9th Cir.1978). This rebuttable presumption that had been applied by the Ninth Circuit provided that because the bankruptcy court possessed exclusive jurisdiction:

"there is no room for the application of the technical doctrine of collateral estop-

---

141, 146 (Bankr.D.P.R.2000) (refusing to grant state court judgment creditor from executing on judgment as such violates *Rooker–Feldman* ); *In re Stoddard*, 248 B.R. 111, 120–22 (Bankr.N.D.Ohio 2000) (erroneous state court revival of judgment cannot be reviewed); *In re Robinson*, 242 B.R. 380, 388 (Bankr.N.D.Ohio 1999) (federal court cannot remedy procedural faults in state court judgment); *In re Hayes*, 235 B.R. 885, 890 (Bankr. W.D.Tenn.1999) (upholding state court determination debt was discharged under § 523(a)(15)); *In re Ott*, 218 B.R. 118, 125 (Bankr.W.D.Wash.1998) (defenses to state court judgment cannot be raised, excepted debt from discharge under § 523(a)(7)); *but*

*see In re McKay*, 2000 WL 1659307 at *1 (9th Cir. Nov. 3, 2000); *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1078–79 (9th Cir.2000); *In re Cruz*, 254 B.R. 801, 810–11 (Bankr.S.D.N.Y.2000); *Stoddard*, 248 B.R. at 121–22(listing exceptions to Rooker–Feldman); *In re Polishuk*, 243 B.R. 408 (Bankr.N.D.Okla.1999); *In re Chaney*, 229 B.R. 266, 269 (Bankr.D.N.H.1999) (refusal to uphold state determination of nondischargeability under § 523(a)(5)). *See generally In re Wilson*, 116 F.3d 87 (3rd Cir.1997); *In re Fiterman*, 1999 WL 1044811, at *3 (D.Minn. Nov. 15, 1999) (refusal to sustain objection to claim on application of *Rooker–Feldman*, state court determined debt was owing).

pel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act [11 U.S.C. §§ 523(a)(2), (4) and (6) ].... A state court judgment ... is sufficient to establish a prima facie case that it represents a debt nondischargeable.... [T]he [Debtor] is entitled to rebut this prima facie case...."

*Id.* at 654–55 (*overruled by Grogan,* 498 U.S. at 284–85 n. 11, 111 S.Ct. at 658 n. 11). Because the Supreme Court clarified the applicability of issue preclusion in dischargeability actions, but did not allow for the application of claim preclusion, there cannot be a 'rebuttable presumption' that a state court judgment is nondischargeable. One of the main reasons for this is that the bankruptcy court is the sole arbiter of discharge and likewise dischargeability. However, as was discussed earlier, if the state court has litigated the issue of dischargeability, then the *Rooker–Feldman* doctrine would preclude a bankruptcy court's review of that judgment and decision.

This Court's inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute which provides that the "judicial proceedings of any court of any ... state shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738; *see also Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985) (discussing the statute). The Supreme Court noted:

This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata [or collateral estoppel] in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."

*Marrese,* 470 U.S. at 380, 105 S.Ct. at 1332 (*quoting Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982)). In the case *sub judice,* the state court judgment was entered by an Alabama circuit court and accordingly, this Court must apply the preclusive effect of the judgment as governed by Alabama law. *Matsushita Elect. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319 (11th Cir.1995); *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499 (11th Cir.1984).

■ For issue preclusion to become effective and applicable, there are four generally accepted requirements: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the final judgment. *Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222 (11th Cir.1998); *HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian),* 100 F.3d 886 (11th Cir.1996); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir.1990). However, this Court is to determine whether to apply issue preclusive effect upon a state court judgment rendered by a court of Alabama. The Alabama law governing issue preclusion is set forth eloquently as follows:

The late Justice Bloodworth, writing for the Court, set out the elements of res judicata and collateral estoppel in *Wheeler v. First Ala. Bank of Birmingham,* 364 So.2d 1190, 1199 (Ala.1978): "Res judicata and collateral estoppel (estoppel by judgment) are two separate rules or sets of rules to determine the conclusiveness of judgments.

"The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3)

parties to both suits substantially identical; and (4) same cause of action present in both suits. If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action.

"Collateral estoppel operates where the subsequent suit between the same parties is not on the same cause of action. Requirements for collateral estoppel to operate are: (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment. If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit."

*Leverette, By and Through Gilmore v. Leverette,* 479 So.2d 1229, 1235–36 (Ala. 1985), (*citing, Fisher v. Space of Pensacola, Inc.,* 461 So.2d 790 (Ala.1984)); *see also Dominex, Inc. v. Key,* 456 So.2d 1047 (Ala. 1984); *Amoco Production Co. v. White,* 453 So.2d 358 (Ala.1984). As can be seen between the federal rules for the application of issue preclusion and the Alabama state law rules, there is no cognizable difference. Although Alabama does not enumerate a rule requiring a prior valid and final judgment, such requirement is evidenced by Alabama's last enumerated rule, that "resolution of the issue was necessary to the prior judgment." *Leverette,* 479 So.2d at 1236.

 The litigant seeking to assert the doctrine of issue preclusion bears the burden of persuasion and the burden of proving all the requisites for its application. In order to meet this burden, the litigant must introduce and produce a sufficient record to reveal the controlling facts and ferret out the exact issues which were litigated in the prior action. Although the burden of proof under *Grogan v. Garner,* is by the preponderance of the evidence standard, any reasonable doubts as to what was actually decided by the prior judgment should be resolved against the judgment having preclusive effect upon that issue(s). *Matter of Merrill,* 594 F.2d 1064, 1067 (5th Cir.1979).

## APPLICATION OF ISSUE PRECLUSION

 The United States Supreme Court has fashioned the controlling legal analysis to be utilized in actions which seeks a willful and malicious injury be excepted from discharge. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Supreme Court held that the statutory language of 11 U.S.C. § 523(a)(6) indicates that for non-dischargeability to arise, there must necessarily be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.,* 523 U.S. at 61, 118 S.Ct. at 977. A willful injury under § 523(a)(6) conjures up the notion of "intentional torts" rather than the lesser torts of negligent or reckless. An intentional tort "generally require[s] that the actor intend the consequences of an act, not simply the act itself." *Ibid.* [citation omitted].

It is not this Court's position to review and have relitigated before it those issues already addressed, litigated, and adjudged by the state court proceeding. In the state court trial, the Plaintiff showed that he was injured, and that such injury was proximately caused by the Defendant in his supervisory co-employee position in which the Defendant had either assumed or been delegated the employer's duty to provide a safe work environment for its employees. On these issues, which requisitely had to be determined by the trier-of-fact in the state court proceeding, this Court finds that the doctrine of issue preclusion is applicable. Further, it does not actually appear that either party is contesting the preclusive effect of these findings. As to the issue of damages, the parties both concede that the state court award of $100,000.00 is not contested in this adversary proceeding. Although

bankruptcy courts differ in whether to apply claim preclusive or issue preclusive effect to damage and compensation awards, because the parties in the case *sub judice* concede the issue, this Court determines that there is preclusive effect to the award.

The next determination of the applicability of issue preclusion concerns whether or not the Defendant acted to cause a deliberate or intentional injury. The state court action was one under supervisory co-employee liability. Upon review of Alabama Supreme Court cases upon this cause of action, this Court finds that the sole fact that a co-employee holds a supervisory position does not make that person liable. *Harris v. Hand*, 530 So.2d 191 (Ala.1988). However, a supervisory co-employee who has either assumed or been delegated the duty to provide a safe workplace can be liable for co-employee third party actions if the supervisory co-employee has breached the delegated duty by failure to exercise reasonable care and that this breach proximately caused the injury. *Id.;* (Pl.Ex. 1, Def.Ex. C, Jury Charge). In accordance with the state court jury charge and in light of the supervisory co-employee status of Mr. Jenkins, this Court must give preclusive effect to the jury finding that Mr. Jenkins, in his supervisory position, acted in a manner upon which willful conduct is assigned, both statutorily and by case law, thereby causing injury to Mr. Fowler due to the removed safety guard. Even affording Mr. Fowler the preclusive effect of such findings, the question remains as to whether the "willful conduct" found in the definition and cases utilizing Ala.Code § 25–5–11(c)(2) is the equivalent to the willful requirement in 11 U.S.C. § 523(a)(6).

In *Kawaauhau,* the Supreme Court was confronted with the pivotal question in § 523(a)(6) of whether an act, done intentionally, that causes injury is excepted from discharge; or whether only those acts done with the actual intent to cause injury are to be excepted from discharge.

*Kawaauhau,* 523 U.S. at 61, 118 S.Ct. at 977. The Supreme Court refused to apply the broad interpretation and rather focused narrowly, utilizing "the 'well-known' guide that exceptions to discharge "should be confined to those plainly expressed." " *Id.,* 523 U.S. at 62, 118 S.Ct. at 977 (*quoting Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)). In relying upon the well-known guide, the Supreme Court analyzed the statutory language as follows:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover ... the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."

*Kawaauhau,* 523 U.S. at 61–62, 118 S.Ct. at 977. The ruling in Kawaauhau is consistent with the historical line of Supreme Court holdings that exception to discharge under § 523(a)(6) requires that the debtor intend an injury; the mere intent to act is insufficient, as are negligent or reckless acts. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904).

Through this progeny of cases, the Supreme Court has clearly established the requisite and threshold bar in actions to determine the dischargeability of a debt caused by the willful and malicious injury

by the debtor.[9] The Supreme Court appears to require a showing of a *mens rea* to injure. An act done intentionally without an intent to injure, but which does in fact injure, fails to be encompassed in this interpretation. *Kawaauhau*, 523 U.S. at 62–64, 118 S.Ct. 974. Another reason for requiring an intent to injure in the narrow application of § 523(a)(6) is to balance the statutory language and give purpose unto all of the enacted exceptions to dischargeability. To that, the Supreme Court aptly stated:

> we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law. Reading § 523(a)(6) [broadly to include intentional acts wherein the injury is unintended] would obviate the need for § 523(a)(9), which specifically exempts debts "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." 11 U.S.C. § 523(a)(9); see also 11 U.S.C. § 523(a)(12) (exempting debts for "malicious or reckless failure" to fulfill certain

commitments owed to a federal depository institutions regulatory agency).

*Kawaauhau*, 523 U.S. at 62, 118 S.Ct. at 977.

■ In response to the Supreme Court opinion in *Kawaauhau*, there are several circuits that are yet again broadening the scope of § 523(a)(6).[10] This Court is acutely aware that the conflicting case law post-Kawaauhau seeks to determine intentional acts that are substantially certain to cause injury should be nondischargeable. However, after a careful reading of *Kawaauhau*, this Court concludes that the Supreme Court and § 523(a)(6) does not permit anything less than a debtor's intent to cause an injury. By broadening the holding of *Kawaauhau*, as the Fifth, Sixth, and Tenth Circuit Courts of Appeals have, not only judicially legislated dischargeability issues that Congress specifically limited, they also portrayed a judicial activism to overrule the Supreme Court by attacking the issue through the backdoor. These circuits bring intentional acts that are substantially certain to cause injury, through a backdoor, permitting them to be deemed nondischargeable. These are the same de-

9. This threshold bar had also been established in the Eleventh Circuit in *Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir.1995) which would appear to have overruled the Eleventh Circuit's cases of *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir. 1988); *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556 (11th Cir.1987); *In re Fielder*, 799 F.2d 656 (11th Cir.1986) on the issue of an intentional act that injures rather than an intent to injure.

10. *See generally In re Sanders*, 210 F.3d 390, 2000 WL 328136, at *2 (10 Cir., Mar. 29, 2000) (unpub.opin.) ('quoting' *Kawaauhau*, 523 U.S. at 62, 118 S.Ct. 974) (*Kawaauhau* stands for the proposition that an injury must be "desired [ ] or in fact anticipated by the debtor."); *In re Markowitz*, 190 F.3d 455, 464 (6th Cir.1999) ("Although the Supreme Court identified a logical association between intentional torts and the requirements of §§ 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing 'substantially certain' consequences. Nonetheless, from the Court's language and analysis in Geiger, we now hold that unless

'the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts §§ 8A, at 15 (1964), he has not committed a 'willful and malicious injury' as defined under §§ 523(a)(6)"); *Matter of Caton*, 157 F.3d 1026, 1030 (5th Cir.1998) (an injury is " 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm); *Matter of Miller*, 156 F.3d 598, 604 (5th Cir.1998) (*Kawaauhau* did not contradict the full definition of intentional tort which "equates intending actual injury to a situation in which 'the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury,' " and such remains good law under § 523(a)(6) actions); *State of Texas By and Through Bd. of Regents of University of Texas System v. Walker*, 142 F.3d 813, 823 (5th Cir.1998) (after *Kawaauhau*, intent to injure can still be established by "showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.").

liberate acts which Congress and the Supreme Court have repetitively and consistently held do not sustain a 'willful and malicious' injury under § 523(a)(6).[11] There are many actions that a debtor can take which will create a debt; some of those actions will require a deliberate act. Fewer of those actions will rise to that of an intentional tort; and even fewer will be had with the requisite and specific intent to injure. *See Kawaauhau,* 523 U.S. at 63–64, 118 S.Ct. at 978; *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *McIntyre v. Kavanaugh,* 242 U.S. 138, 141, 37 S.Ct. 38, 39, 61 L.Ed. 205 (1916). It is those actions which Congress intends to be nondischargeable. This narrow interpretation affords a debtor the true intent of a "fresh start" as anticipated by Congress, yet ensures that culpable debtors do not gain an unfettered advantage over their creditors and abuse the bankruptcy system as a protective blanket for such culpable actions.

■ With the Supreme Court requiring that the debtor intend the injury through a deliberate or intentional act, actions to determine the dischargeability of willful and malicious injury rise to the uppermost level of civil actions. Although the plaintiff need only meet the preponderance of the evidence standard under *Grogan v. Garner,* the plaintiff must delve into the realm of evidence generally reserved for criminal and quasi-criminal actions; that of the defendant's state of mind. The reiteration by the Supreme Court in *Kawaauhau* that a debt arising from a willful and malicious injury must have a showing of specific intent to injure eradicates the confusion surrounding general intent actions that injure. The debtor's negligence, wantonness, recklessness, carelessness, inadvertence, and similar general intent acts are finally and conclusively held to no longer sustain a cause of action under § 523(a)(6).

■ Applying the mandate in § 523(a)(6) that the debtor must intend to injure, this Court must determine whether the state court's finding of willful conduct shows an intent to injure. The Alabama State Legislature enacted Ala.Code § 25–5–11 as a remedial remedy enabling an injured employee to obtain compensation from a co-employee under certain circumstances. The statute allows an employee to recover from third party co-employees only for willful conduct which results in or proximately causes injury or death. Ala. Code § 25–5–11(a). The statute goes on to define willful conduct with respect to safety devices and guards as:

> The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal....

Ala.Code § 25–5–11(c)(2). The Alabama Supreme Court has answered the question this Court is faced with presently. A cause of action under Ala.Code § 25–5–11(b) that utilizes the statutory definition of "willful conduct" defined by Ala.Code § 25–5–11(c)(2) does not require a showing by the plaintiff of any intent to injure.

> By making the willful and intentional removal of a safety guard the basis for a cause of action without the higher bur-

---

11. The Congressional intent behind § 523(a)(6) requiring a specific intent to injure can be seen by the Bankruptcy Code amendments which 'added' § 523(a)(9). Since 1946, courts had been holding that injuries caused by drunk driving were nondischargeable under 'willful and malicious,' then § 17(a)(2) of the Bankruptcy Act, because the debtor acted deliberately and injury was substantially certain to follow such action. *See Harrison v. Donnelly,* 153 F.2d 588 (8th Cir.

1946); *Den Haerynck v. Thompson,* 228 F.2d 72 (10th Cir.1955). In response to courts again restricting 'willful and malicious,' under 11 U.S.C. § 523(a)(6), to intentional injuries, Congress amended § 523(a) to include a specific provision for drunk driving injuries. 11 U.S.C. § 523(a)(9). By so amending to add a provision rather than amending the language of § 523(a)(6) to include 'deliberate acts whereby injury is substantially certain to occur,' Congress spoke volumes.

den of proof of "intent to injure" found in subsection (a), the legislature acknowledged the important public policy of promoting safety in the workplace and the importance of such guards in providing such safety.

*Bailey v. Hogg,* 547 So.2d 498, 499–500 (Ala.1989). Further, in *Haisten v. Audubon Indem. Co.,* 642 So.2d 404, 407 (Ala. 1994), the Alabama Supreme Court closed the door upon any requirement to show a purpose, intent, or design to injure in an action brought for the willful conduct in removal of a safety device. An action using the definition in Ala.Code § 25–5–11(c)(2) "arguably allows recovery under a finding that a reasonable person had or should have had "knowledge that injury or death would likely or probably result," even if the defendant co-employee did not subjectively expect or intend to cause inju-

ry." *Ibid.; see also Harris v. Gill,* 585 So.2d 831 (Ala.1991); *Pressley v. Wiltz,* 565 So.2d 26 (Ala.1990). With the Alabama Supreme Court explaining that there is no requirement by a plaintiff to show that the co-employee had an "intent to injure" in a removed safety guard third party liability action, the issue of willful in the state court action differs from that required to be shown in the bankruptcy dischargeability action. Thereby, this Court cannot afford unto Mr. Fowler any preclusive effect of the state court jury finding that the injury occurred by the 'willful conduct' of Mr. Jenkins.[12]

■■ Not finding willfulness as used in § 523(a)(6) is further buttressed by the jury charge itself. The state court judge charged the jury, in pertinent part, as follows:

**12.** As will also be seen by the analysis of the jury charge, although the Alabama State Legislature uses the wording "willful and intentional" as a statutory definition of willful conduct in safety guard removal actions. The actual standard under Ala.Code § 25–5–11(c)(2) is a standard of "wantonness." Under Ala.Code § 25–5–11(c)(2), willful conduct includes the "willful and intentional removal ... with knowledge that injury or death would likely or probably result from the removal...." The Alabama Supreme Court defines "willfulness" as "the conscious doing of some act or omission or some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury." *Reed v. Brunson,* 527 So.2d 102, 119 (Ala.1988) (*cited in Thermal Components, Inc. v. Golden,* 716 So.2d 1166, 1169 fn. 2 (Ala. 1998)). The Alabama Supreme Court also defines "wantonness" as "the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or probably result." *Ibid.* When comparing the statutory definition under Ala.Code § 25–5–11(c)(2) with the definitions of willfulness and wantonness as promulgated by the Alabama Supreme Court, the standard to be applied in a 25–5–11(c)(2) action is not the willfulness standard, but rather the wantonness standard.

This Court is aware that the Alabama Supreme Court has consistently held that evidence of negligence or wantonness is in-

sufficient to establish the "willful conduct" required by Ala.Code § 25–5–11(c). *See Thermal Components,* 716 So.2d 1166; *Barron v. CNA Ins. Co.,* 678 So.2d 735 (Ala. 1996); *Lane v. Georgia Cas. & Sur. Co.,* 670 So.2d 889 (Ala.1995); *Lee v. Longhorn Steaks of Ala., Inc.,* 662 So.2d 672 (Ala. 1995); *Townsend v. GM,* 642 So.2d 411 (Ala.1994); *Grimes v. Stewart,* 628 So.2d 467 (Ala.1993); *Blackwood v. Davis,* 613 So.2d 886 (Ala.1993); *Jones v. Lowe,* 611 So.2d 345 (Ala.1992); *Hutchins v. Huntley,* 595 So.2d 886 (Ala.1992); *Lee v. Ledsinger,* 577 So.2d 900 (Ala.1991); *Turnbow v. Kustom Kreation Vans,* 535 So.2d 132 (Ala. 1988); *State Farm Mut. Auto. Ins. Co. v. Cahoon,* 287 Ala. 462, 252 So.2d 619 (Ala. 1971). However, this consistent holding evidenced by the Alabama Supreme Court opinions is in regards to the willful conduct definition in Ala.Code § 25–5–11(c)(1), which requires a "purpose or intent or design to injure another." Because the definition of willful conduct in Ala.Code § 25–5–11(c)(2) does not require a showing of purpose or intent or design to injure, but merely requires a showing that the co-employee had "knowledge that injury or death would likely or probably result from removal [of a safety guard]" the requisite showing is that of wantonness, as arguably supported by the Alabama Supreme Court. *Haisten v. Audubon Indem. Co.,* 642 So.2d 404, 407 (Ala.1994); *Bailey v. Hogg,* 547 So.2d 498, 499–500 (Ala.1989).

... Mr. Jenkins, they [the Plaintiff] claim was responsible for providing Mr. Fowler a safe place to work, and that Mr. Jenkins knew or should have known that a safety device on a machine that Mr. Fowler was working on had either been intentionally removed or had been willfully and intentionally bypassed or had willfully or intentionally been failed to be maintained in such a manner that in essence, it was removed because of the failure to maintain it....

Jury Charge, Pl.Exh. 1, p. 7. Further into the jury charge, the court instructed the jury as to the burden of proof that was upon the Plaintiff as follows:

... The burden on the plaintiff in such a case against Mr. Jenkins is to prove the following things to your reasonable satisfaction.... Number three, that the safety device on the machine was intentionally, willfully or deliberately removed, or that it was intentionally, or willfully bypassed, or finally, that there was a willful or intentional failure to maintain or repair that safety device so that it amounted to a removal of the device. The plaintiff must further prove that the defendant, Eddie Jenkins, was in a supervisory position over the plaintiff with duties of providing the plaintiff with a safe place to work. The plaintiff must further prove against Mr. Jenkins that the defendant Eddie Jenkins, knew or should have known that the safety device had been removed from the machine.

Id., pp. 16–17. As can be seen in this charge, the jury could reasonably have deliberated upon a standard and burden of proof that Mr. Jenkins "knew or should have known" of the problems associated with the safety guard. "In the absence of specific findings of fact, it can not be determined upon what basis of liability the Alabama judgment rests." *Ikner*, 883 F.2d at 990. Since the state court judgment could reasonably be based upon a finding that Mr. Jenkins "knew or should have known that safety device had been removed from the machine," Jury Charge, Pl.Exh. 1, pg. 17, such finding "is insufficient to except the debt from discharge under the Bankruptcy Code." *Ikner*, 883 F.2d at 990. "The willfulness prong of the "willful and malicious injury" exception to dischargeability can not be established by a mere showing of a reckless disregard of duty." *Ibid.*[13] As the Alabama Supreme Court has aptly stated in *Bailey v. Hogg*, there is not a burden to show that the defendant held an "intent to injure." Such burden is a requisite issue in pursuing an exception to discharge under 11 U.S.C. § 523(a)(6). Because the jury was charged with a lesser burden, and could have reasonably found liability upon such lesser burden, there necessarily cannot be preclusive effect given to the issue of willfulness.

Without preclusive effect on the issue of willfulness, this Court must now turn to the evidence presented by the parties to determine whether there is sufficient evidence to support a finding that Mr. Jenkins acted with the specific intent to injure as is required by statutory language and as is interpreted by the Supreme Court in *Kawaauhau*. The evidence presented indicates that Mr. Jenkins, as store manager and ultimate supervisor over Mr. Fowler, knew or should have known that the safety guard had been malfunctioning and was in need of maintenance or repair. It would also be

---

**13.** The Eleventh Circuit's use of the word reckless is interchangeable with that of wantonness in the quoted citation. The act alleged in Ikner to be nondischargeable arose out of the negligent and wanton conduct of the debtor involved in an automobile accident. *Ikner*, 883 F.2d at 988. After a review of the Alabama definition of wantonness, the Eleventh Circuit held that "although wanton-ness involves a conscious act and knowledge that injury is a likely consequence, the standard for wantonness under Alabama law seems to encompass an element of recklessness." *Id.*, at 990. As has already been shown *infra*, the standard applied in actions utilizing the definition found in Ala.Code § 25–5–11(c)(2) is that of wantonness.

reasonable from the evidence to find that Mr. Jenkins, as store manager and ultimate supervisor over Mr. Fowler, knew or should have known that the safety guard was not only malfunctioning, but was being bypassed by the employees in order to cut meat. Additionally, the evidence presented indicates the Mr. Jenkins either assumed or was delegated the employer's duty to provide a safe work environment.

The evidence aptly indicates that Mr. Jenkins, as well as several witnesses, were acutely aware that a malfunctioning and bypassed safety guard on a meat saw would likely result in injury or death. Finally, it is reasonable from the evidence to find that by not having the safety guard repaired, Mr. Jenkins failed to perform his assumed/delegated duty to provide a safe work environment. These factual findings are preclusively applicable due to the state court judgment under Ala.Code § 25–5–11. However, the trial and deposition transcripts presented into evidence do not show any intent by Mr. Jenkins to injure Mr. Fowler or any employee-subordinate.

Due to the preclusive facts found at the state trial, Mr. Jenkins knew of the malfunctioning and bypassed safety guard. Further, Mr. Jenkins had an assumed/delegated duty to ensure a safe work environment by ensuring the safety guard was repaired. It is further reasonable from the jury charge and state judgment that Mr. Jenkins failed to ensure the repair was accomplished and thereby failed in his assumed/delegated duty. Yet, there is no evidence that Mr. Jenkins intended to disregard or fail in his assumed/delegated duty.[14]

Even if the Plaintiff showed that Mr. Jenkins intended to disregard or fail an assumed or delegated duty to ensure a safe work environment, under *Kawaauhau*, such intent is merely a deliberate act, or here, deliberate omission, but does not show an intent to injure; although injury is reasonably associated with the failure to repair a safety device. This Court finds and concludes that the evidence presented, by the trial and deposition transcripts and the exhibits entered into evidence, fails to show an intent to injure on the part of the Defendant–Debtor, Mr. Jenkins.

The final issue to address in a dischargeability action for willful and malicious injury is that of the debtor's wrongful and intentional action done without cause or excuse. Mr. Fowler asserts that because the state court action found that the safety guard was willfully and intentionally removed, such finding is tantamount to and equal to a malicious injury. Such assertion does not appear to adequately address the requirements under § 523(a)(6). The exception to discharge for a willful and malicious injury requires "a wrongful act, done intentionally, without just cause or excuse." *Tinker*, 193 U.S. at 487, 24 S.Ct. at 509 (*quoting Bromage v. Prosser*, 4 Barn. & Cress. 247, 107 Eng.Rep. 1051 (K.B.1825) (defining malice)). As can be seen by the Supreme Court's definition there are three factors which make-up a malicious injury. Those three factors are borne out through the quote of *Bromage*, as used by the Supreme Court, which went on to analyze what legal malice entails:

> 'Malice, in common acceptation, means ill will against a person; but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse. If I give a perfect stranger a blow likely to produce death, I do it of malice, because I do it intentionally and without just cause or excuse. If I maim cattle, without knowing whose they are, if I poison a fishery, without knowing the owner, I do it of malice, because it is a wrongful act, and done intentionally. If I am arraigned of felony, and wilfully stand mute, I am said to do it of malice, because it is intentional and without just

---

14. Showing intentional disregard for an assumed or delegated duty may be beneficial upon a showing of malice, but will generally not suffice for the requisite showing of willful injury which requires an intent to injure not merely an intentional act or omission.

cause or excuse. If I traduce a man, whether I know him or not and whether I intend to do him an injury or not, I apprehend the law considers it as done of malice, because it is wrongful and intentional. It equally works an injury, whether I meant to produce an injury or not....'

We cite the case as good definition of the legal meaning of the word malice. The law will, as we think, imply that degree of malice in an act of the nature under consideration, which is sufficient to bring it within the exception mentioned.

*Tinker,* 193 U.S. at 487, 24 S.Ct. at 509 (*quoting Bromage v. Prosser,* 4 Barn. & Cress. 247, 107 Eng.Rep. 1051 (K.B.1825)). However, because the Plaintiff has failed to meet its burden of proof and persuasion on the issue of willful injury, this Court need not and does not address the issue of malicious injury.

Because the plaintiff fails to meet his burdens of proof and of persuasion, this Court finds, determines, and concludes that the underlying debt is not one arising from the willful and malicious injury by the debtor and thereby such debt is dischargeable. A separate judgment shall be entered consistent with this Memorandum Opinion, pursuant to Fed.R.Bankr.P. 9021, *applying* Fed.R.Civ.P. 58.